UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:04-CR-86-TS |
| | ) | |
| EMERSON J. PELZ | ) | |

**OPINION AND ORDER**

**A. Background**

On October 13, 2004, police officers removed a short-barrel Rugger .22 caliber rifle from the front passenger's seat of the car in which the Defendant, Emerson J. Pelz, had been riding. Subsequently, the Defendant was charged in a single count Indictment for being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1). The Defendant has moved to suppress the firearm from being used against him at trial on the grounds that the search and seizure violated his Fourth Amendment rights.

On March 24, 2005, the Court held an evidentiary hearing on the motion. At the conclusion of the hearing, the Court took the motion under advisement and the parties were given additional time to file briefs.

The government submitted a post-hearing brief on May 24, 2005, in opposition to the motion to suppress. The Defendant filed the response in support of the motion on June 27, 2005. The next day, the Defendant also filed a motion for oral argument on his motion to suppress. On July 12, 2005, the government filed a reply brief in opposition to the motion to suppress and a response to the Defendant's motion for oral arguments.

**B. The Defendant's Motion for an Oral Argument**

The Defendant moved for oral arguments on his motion to suppress. The Court finds that, because the issues in this case are straightforward, oral arguments are unnecessary. Both parties had ample time to prepare their post-hearing briefs and have adequately developed the issues before the Court. The Court will rely on the parties written submissions to resolve the controverted issues.

**A. The Defendant's Motion to Suppress**

**(1)** *Facts*

On October 13, 2004, while traveling eastbound on Baseline Road in Noble County, Indiana, State Conservation Officer Rodney Clear saw two cars traveling well under the speed limit as they approached from the opposite direction. One car was a white Buick and the other was a silver Chevrolet. As these cars passed Officer Clear's marked SUV, he noticed that a lone woman driver occupied the Buick and two men occupied the Chevrolet. Officer Clear watched both cars pull into the driveway of a construction business on Baseline Road.

Officer Clear was familiar with the business on Baseline Road and the owner who operated it. He knew that the business was conducted primarily over the phone and did not have stop-in visitors. Officer Clear turned around and approached the two cars. He was both suspicious of their activity and was planning on assisting the drivers if they were having difficulty with their cars.

Officer Clear saw the white Buick pulling away from the business and heading westbound. The car now had three occupants; the Chevrolet had been left on the business's drive. Officer Clear caught up to the Buick and ran the license plate through the Noble County Sheriff's Department. The dispatcher advised him that the car licensed to that plate was teal in color.

On the basis of this information, Officer Clear stopped the white car at about 8:12 a.m. He

approached the driver's door and asked if the occupants were having car problems, to which the woman driver, later identified as Ukena Pritchard, responded, "yes." Pritchard explained that the Chevrolet had broken down earlier that morning and they were trying to transport it when it stalled again at the business, where they left it.

When asked for her driver's license, Pritchard responded that she did not have it with her. The Defendant provided Officer Clear an expired Indiana I.D. card when pressed for identification. The man in the back seat, Bruce Lantz, did not have any identification. However, he told Officer Clear his name, and Officer Clear returned to his patrol car to run further checks.

Back in his car, Officer Clear requested assistance from the Noble County Sheriff's Department. About five minutes later, Noble County Sheriff's Deputies Steve Lawson and Dave Gossett arrived at the scene. After Officer Clear explained the situation to them, the three officers approached the Buick again and Officer Clear told the occupants that the officers needed their names and dates of birth in order to run further checks. Additionally, Officer Clear advised that if anyone had outstanding warrants they should disclose that information now, as the officers would find this out very shortly. Lantz informed them that there was an outstanding warrant for his arrest. Deputies Gossett and Lawson asked Lantz to exit the car, and Lantz was promptly arrested.

At this time, the officers also learned via radio that Pritchard's driver's license was suspended. Pritchard was also asked to exit the car, and Deputy Lawson issued her a traffic citation. At this point, the Defendant was the only person remaining inside.

In running the license plate of the white Buick through the county dispatch, Officer Clear was also told that the Buick belonged to John Bradley. Thus, after determining that none of the passengers had a valid license or were able to drive the car, and that the car was owned by an absent

3

person, the officers requested a tow truck to remove the car from the road.

Officer Clear went to the front passenger's window to tell the Defendant that the car would be towed. While talking to the Defendant, Officer Clear noticed a black leather jacket resting over the Defendant's leg. Deputy Lawson also saw the jacket. As the Defendant stepped out of the car, the jacket remained on the front seat. Officer Clear picked up the jacket and asked the Defendant if the jacket was his. The Defendant shook his head in the negative. Officer Clear then asked Pritchard, the driver, if the jacket was hers. She, too, denied ownership. Officer Clear then stated, "Well, it has to be somebody's coat." Officer Clear then moved the jacket to his other hand and simultaneously felt a bulky, hard object. He reached into the right pocket of the jacket and found a sawed-off .22 caliber rifle, which he pulled out. Officer Clear looked up and asked, "Whose coat is this? Is it Emerson's?" Pritchard nodded and said, "yes." (Sup. Hearing Tr. at 30:5–6.) The Defendant responded to this statement by saying, "Why are you doing this to me?" (Sup. Hearing Tr. at 30:8–9.) Officer Clear then felt the other parts of the coat and discovered two fully loaded .22 magazine clips in the left pocket. The firearm was discovered about forty-five minutes from the time of the initial traffic stop.

Later that afternoon, as the officers were completing their paperwork for the morning's events, Deputy Lawson informed Officer Clear that the dispatcher had incorrectly identified the recorded color of the Buick. The Buick was in fact registered as white, and the dispatcher erred identifying it as teal. (*See* Def.'s Ex. E.)

**(2)** *The Defendant's Contentions*

The Defendant raises three issues in his Motion to Suppress. First, he argues that the government conceded in its briefs that the government "has no evidence that Pelz possessed the weapon in question," and that the case should accordingly be dismissed. Second, the Defendant argues that, if the case is to continue, he has standing to challenge the search, as he had a reasonable expectation of privacy in the jacket leaning against his leg. Third, assuming he has standing to challenge the search, the Defendant argues that the officers did not conduct a valid *Terry* stop and violated the Defendant's Fourth Amendment rights, and the evidence seized should therefore be suppressed.

**(3)  *Terry Stop***

The Defendant claims that Officer Clear conducted an invalid *Terry* stop because, without an articulated reason that weapons were present in the car, he asked the Defendant to step out of the car and grabbed the jacket. The Defendant does not object to the initial traffic stop. The government insists that Officer Clear conducted a valid *Terry* stop.

Brief investigatory stops of suspicious activity are permitted under *Terry v. Ohio*, and to make such a stop an officer need only possess "reasonable suspicion," supported by articulable facts, that justifies the intrusion. 329 U.S. 1, 30 (1968); *see also United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). However, a person must be seized before the Fourth Amendment is implicated under the *Terry* stop. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Borys*,  766 F.2d 304, 308 (7th Cir. 1985) (quoting Justice Stewart's plurality opinion in *United States v. Mendenhall*, 446 U.S. 544 (1980) as

recognized law in the Seventh Circuit).

At the time Officer Clear asked the Defendant to step out of the car, the Defendant was not seized. If anything, a *Terry* stop took place when Officer Clear decided to pull over the white Buick on the basis of information that its plates were registered to a teal car. After the initial investigation was over, the *Terry* stop ended as well. When Officer Clear told the Defendant to get out of the car because it would be towed away to clear the road, he was not seizing him. No reasonable person could have construed Officer Clear's request to get out of a car that was to be towed as a prohibition to leave. Since the Defendant was not seized until the weapon was discovered, the parties' discussion on *Terry* is beside the point. *See Smith v. Ball State Univ.*, 295 F.3d 763, 768 n.3 (7th Cir. 2002) ("A Terry Stop . . . is a brief, non-intrusive detention that allows law enforcement officers to investigate possible criminal activity despite the absence of probable cause to arrest formally.").

**(4)** *The Search and Seizure of the Jacket*

(a)  *The Defendant's Standing to Challenge the Officers' Search*

The government challenges the Defendant's ability to object to the search that yielded the firearm for which the Defendant is being charged. The government argues that the Defendant lacks a reasonable expectation of privacy in the leather jacket seized from the vehicle and, additionally, that the Defendant waived any privacy expectations by explicitly denying ownership of the jacket. The Defendant counters by arguing that this case is distinguishable from the government's cited precedents and the Court should recognize the Defendant's expectation of privacy in an item of clothing lying against his person within the automobile.

The protections of the Fourth Amendment are personal in nature, and, in order to challenge

6

police searches or seizures, a Defendant must show that his or her own person, house, papers, or effects were implicated by the police conduct. *See, e.g., Alderman v. United States*, 394 U.S. 165, 174 (1969). The basic "standing" question under the Fourth Amendment, therefore, is whether the police have intruded on the particular defendant's Fourth Amendment rights. However, the Supreme Court has rejected analyzing Fourth Amendment cases according to the notion of standing. In *Rakas v. Illinois*, 439 U.S. 128 (1978), the Supreme Court held that the question of standing is properly subsumed into the substantive question of whether the Defendant had a legitimate expectation of privacy in the area searched by the police. *See also Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998) (criticizing the lower court's Fourth Amendment "standing" analysis, as "an analysis that this Court expressly rejected 20 years ago" in *Rakas*). Thus, the proper analysis is simply to ask whether the Defendant possessed a reasonable expectation of privacy in the jacket seized from the passenger's seat where the Defendant had been seated.

(b)  *The Defendant's Reasonable Expectation of Privacy*

Passengers in borrowed vehicles do not necessarily vitiate all Fourth Amendment protections. *See Rakas*, 439 U.S. at 143 (rejecting the "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like" in evaluating the applicable Fourth Amendment protections). However, factors such as ownership and location do have consequences in the evaluation of what expectations of privacy are considered reasonable by modern Fourth Amendment jurisprudence. For example, the Supreme Court in *Rakas* stated that the Defendant did not have a reasonable expectation of privacy in the glove compartment of the borrowed vehicle or in a compartment under the seat of the car because, "[l]ike the trunk of an automobile, these are

7

areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id*. at 148–49.

Whether a passenger in a vehicle possesses a reasonable expectation of privacy in the jacket that had been laying over his leg is a question of objective reasonableness. Courts, building on the rulings of courts before them, must determine if this is an expectation that "society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). However, in this case this question need not be adjudicated, as the Defendant changed the complexion of the Fourth Amendment analysis by explicitly disclaiming to Officer Clear any ownership of the jacket.

(c)  *The Defendant Abandoned the Jacket*

If an individual denies ownership of an item in response to police inquiry, the individual has "abandoned" the item and may not belatedly invoke his or her Fourth Amendment rights in the item. *See United States v. McDonald*, 100 F.3d 1320, 1327–28 (7th Cir. 1996) (finding that a bus passenger could not invoke Fourth Amendment protections in the contents of her luggage after denying ownership of the luggage in response to police inquiries). Abandoned property is not afforded Fourth Amendment protections. *Abel v. United States*, 362 U.S. 217, 241 (1960). Whether an item has been abandoned is determined by inferring "from 'words spoken, acts done, and other objective facts' whether [the defendant] 'voluntarily discarded, left behind, or otherwise *relinquished his interest in the property* in question.'" *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996) (quoting *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994)).

8

Here, Officer Clear told the Defendant that the car would be towed and that he needed to get out. As the defendant stepped out, he left the jacket behind. Seeing this, a reasonable officer could draw three conclusions: first, the jacket was not the Defendant's; second, since the Defendant knew that the car was going to be towed, he was abandoning his jacket to be inventoried with the car; or, third, the Defendant inadvertently left his jacket behind. It's unknown which of the three scenarios Officer Clear believed. Nor is it relevant, as the Fourth Amendment jurisprudence is not concerned with subjective thoughts of police officers. *See United States v. Trigg*, 878 F.2d 1037, 1040 (7th Cir. 1989) (noting that the Seventh Circuit considers only purely objective evidence in evaluating the reasonableness of a particular police activity) (citing cases)). Moreover, under all scenarios Officer Clear was justified to reach for the jacket without violating the Defendant's Fourth Amendment rights.

Under the first scenario, Officer Clear was justified to believe that the jacket did not belong to the Defendant and that he had no expectation of privacy in it. Under the second scenario, Officer Clear observed the Defendant abandoning the jacket, thus waiving any challenge to intrusion to his privacy. Finally, under the last scenario, even if the Defendant inadvertently leave the jacket behind, Officer Clear was justified to take it out of the car soon to be towed away and give it to the Defendant. When the Defendant negated his ownership, he confirmed that he had not inadvertently left the jacket behind but was disclaiming any ownership or voluntarily abandoning it, thus waiving any rights to privacy in it. As in *McDonald*, the Defendant, therefore, may not invoke the Fourth Amendment to contest the search of the jacket he abandoned. Therefore, the discovery of the weapon and the two magazines in the jacket will not be excluded from trial.

(d)  *Search Incident to an Arrest*

In addition to the abandonment, an independent reason existed for the jacket's justified removal from the car: search incident to an arrest. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 460–61 n.4 (1981); *see also United States v. Pittman*, 411 F.3d 813, 816 (7th Cir. 2005) (justifying such searches because "there might be a weapon within the occupant's reach that he might grab, or contraband or evidence of crime that he might try to flee with, throw away, conceal, or in some cases even swallow" (citations omitted)).

Here, the officers arrested Lantz after they learned he had an outstanding warrant for his arrest. At this point, in accordance with *Belton*, the interior of the Buick was subject to the officers' search. When moments later the Defendant left the jacket behind, the jacket became subject to the search as well. That is one more reason why Officer Clear's removal of the jacket did not violate the Defendant's Fourth Amendment's rights.

(e)  *Inevitable Discovery*

There is one more reason for not excluding the firearm and ammunition from trial: these items were subject to the inevitable discovery during the inventory search of the towed car. "Warrantless inventory searches of vehicles are lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property—and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *United States v. Pittman*, 411 F.3d

813, 817 (7th Cir. 2005). At the suppression hearing, the officers testified that their procedure provided that towed cars be inventoried. Therefore, since the leather jacket was left in the car, it would have been inventoried, which would have led the police to the discovery of its contents. This alone is sufficient to deny the Defendant's motion to suppress. *See id.* ("[T]he 'inevitable discovery' doctrine provides a solid ground for upholding the search.").

**(4) *The Defendant's Argument for Dismissal of the Charge***

The Defendant argues that the government has conceded that he did not own the leather jacket or have any possessory interest in it and, thus, admitted that the Defendant was not a felon in possession of a weapon. He grounds this assertion on the government's insistence that the Defendant may not challenge the search of the jacket because, at the time of its removal from the car, he did not demonstrate that he either owned or possessed the jacket. As a consequence, the Defendant requests that the Court dismiss the charge against him.

The Defendant mistakes the government's Fourth Amendment analysis for a concession that the Defendant never possessed the weapon for which he is charged. The government does not state that the Defendant did not at any time possess the weapon. Rather, it argues that at the time Officer Clear removed the jacket, his actions were justified for the purposes of the Fourth Amendment because the Defendant disclaimed the jacket's ownership. The government believes that, moments later, the officers learned that the jacket and its contents did indeed belong to the Defendant, which justified the Indictment. The government did not in any way concede the latter, and the Defendant's insistence that the Indictment must be dismissed is unwarranted.

11

**CONCLUSION**

For the above reasons, the Court DENIES the Defendant's Motion for Oral Argument [DE 34], and DENIES his Motion to Suppress [DE 23].

SO ORDERED on August 11, 2005.

    S/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT